**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| DIANE T. BAILEY, | DOCKET NUMBER |
| Appellant, | DC-0752-16-0463-C-1 |
| v. | |
| U.S. POSTAL SERVICE, | DATE: August 7, 2026 |
| Agency. | |

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Casanova Hambrick</u>, Chadburn, North Carolina, for the appellant.

<u>Roderick Eves</u>, Esquire, and <u>Brandon Truman</u>, Esquire, St. Louis, Missouri, for the agency.

<u>Marlee K. Evans</u>, Esquire, Washington, D.C., for the agency.

**BEFORE**

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

**ORDER**

The appellant has filed a petition for review of the compliance initial decision, which dismissed her petition for enforcement as untimely, and, in the alternative, denied her allegations that the agency breached the parties' global settlement agreement on the merits. For the reasons discussed below, we GRANT

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the appellant's petition for review. We REVERSE the compliance initial decision and find that the agency breached the parties' settlement agreement by collecting a debt for health insurance premiums after the agreement's execution. We FIND the agency in noncompliance with agreement regarding this debt. We AFFIRM the administrative judge's determination that the appellant untimely sought relief for an alleged delay in reissuing her credentials and paying her salary following her reinstatement and that, in any event, she is not entitled to relief on this claim. We also AFFIRM the administrative judge's determination that the appellant untimely filed her claim regarding a debt for unearned leave and VACATE his alternative finding on the merits of this claim. Finally, we AFFIRM as MODIFIED the administrative judge's conclusion that the appellant failed to prove that the agency breached the agreement concerning its handling of her life insurance benefit, but we modify his reasoning and VACATE his alternative determination that this claim was untimely filed.

## BACKGROUND

The agency removed the appellant from her position as a Customer Services Supervisor effective March 21, 2016. *Bailey v. U.S. Postal Service*, MSPB Docket No. DC-0752-16-0463-I-1, Initial Appeal File (IAF), Tab 5 at 13, 15-17. She appealed her removal to the Board. IAF, Tab 1 at 4. The administrative judge in that appeal issued an initial decision that affirmed her removal. IAF, Initial Decision, Tab 13 at 1, 3. The appellant filed a petition for review challenging the initial decision. *Bailey v. U.S. Postal Service*, MSPB Docket No. DC-0752-16-0463-I-1, Petition for Review (PFR) File, Tab 1. The full Board found that the appellant was entitled to a hearing and to have her affirmative defenses adjudicated, vacated the initial decision, and remanded the appeal to the regional office. PFR File, Tab 9, Remand Order at 6.

On remand, the parties entered into a settlement agreement. *Bailey v. U.S. Postal Service*, MSPB Docket No. DC-0752-16-0463-B-1, Remand File (RF),

Tabs 25-26. Pursuant to the July 18, 2022 agreement, in relevant part, the appellant would be restored to her previous position at the agency, the roughly 6 years between her removal and return to work would be entered as leave without pay (LWOP), and the agency would pay the appellant a one-time, lump-sum payment of $50,000. RF, Tab 26 at 5-6, 8. The parties further agreed that the $50,000 payment to the appellant was a full settlement and satisfaction of any claims arising from the subject matter of the appeal. *Id.* at 6. The agreement provided that the appellant was not entitled to any other back pay, leave restoration, compensatory damages, or retroactive benefit, or any other relief that was not specifically set forth in the agreement. *Id.* Under the terms of the agreement, the appellant was to continue in an LWOP status unless and until she reported to work. *Id.* at 5-6. Finally, the agreement required that prior to filing any petition for enforcement, the appellant would contact the agency to allow it "a reasonable time to correct any real or perceived difficulties arising from the implementation of th[e] [a]greement." *Id.* at 8.

On November 18, 2022, the administrative judge issued a remand initial decision that entered the settlement agreement into the record for enforcement purposes and dismissed the appeal with prejudice as settled. RF, Tab 27, Remand Initial Decision at 1-2. The agency reinstated the appellant effective November 21, 2022, and although the exact date is unclear, it appears that she did report to work after her reinstatement. *Bailey v. U.S. Postal Service*, MSPB Docket No. DC-0752-16-0463-C-1, Compliance File (CF), Tab 11 at 20-31. The appellant retired from the agency on January 18, 2023. CF, Tab 1 at 3, Tab 11 at 17. On September 5, 2023, the Office of Personnel Management (OPM) issued the appellant a notice that it planned to collect an overpayment arising out of its miscalculation of the appellant's interim retirement annuity payments. CF, Tab 25 at 24-25.

On April 22, 2024, the appellant filed a petition for enforcement, in which she alleged that the agency was in violation of several provisions of the

settlement agreement. CF, Tab 1 at 4-5. Among other things, she alleged that the agency failed to properly reinstate her as required by the terms of the agreement, failed to timely restore her health insurance once she was reinstated, retroactively charged her for health insurance premiums accrued between her removal and reinstatement, and improperly processed her life insurance paperwork upon her retirement. *Id.* at 4. She also alleged that the agency garnished her wages from her private employer to recoup that debt, and that OPM improperly sought overpayment of interim annuity benefits. *Id.*; CF, Tab 25 at 24-25. In response, the agency filed a motion to dismiss the petition for enforcement as untimely filed. CF, Tab 3 at 6. Alternatively, the agency argued that it had materially complied with the settlement agreement and submitted evidence that it had reinstated the appellant to her former position and paid her the $50,000 remittance check. *Id.* at 8-10.

Acknowledging the agency's arguments that the petition for enforcement may have been untimely filed, the administrative judge issued a timeliness order to the parties. CF, Tab 24. The timeliness order set forth the applicable legal standards and ordered the appellant to present argument and evidence as to the timeliness of her compliance appeal. *Id.* at 1-3. The order also instructed the agency to file a reply to any response the appellant submitted. *Id.* at 3. Both parties filed the required submissions and provided additional argument and evidence. CF, Tabs 25-29.

The administrative judge issued a compliance initial decision, which dismissed the petition for enforcement as untimely filed, and, in the alternative, denied the petition for enforcement on the merits. CF, Tab 31, Compliance Initial Decision (CID) at 1. Specifically, the administrative judge found that the appellant became aware of the agency's alleged breaches of the settlement between 16 months and 3½ months prior to her filing her petition for enforcement, and she did not introduce evidence or argument as to the reasonableness of her delay. CID at 9, 11, 13. Alternatively, the administrative

judge denied the claims on the merits, finding that the appellant's requested relief was not provided for by the agreement. CID at 9-14.

The appellant has timely filed a petition for review of the compliance initial decision. Compliance Petition for Review (CPFR) File, Tab 1. On review, she reargues the timeliness of her petition for enforcement, that the agency improperly garnished her wages, that OPM improperly assessed an overpayment related to her interim annuity payments, and that either OPM or the agency improperly processed her life insurance paperwork upon her retirement. *Id.* at 6-7, 11. She also argues that she was charged for health insurance premiums for at least a part of the period between her removal and reinstatement. *Id.* at 7. The agency has responded to the petition for review, and the appellant has replied. CPFR File, Tabs 5-6.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The appellant's petition to enforce the agreement regarding her return to pay status was untimely, and she is not entitled to relief on the merits.</u>

The appellant has not specifically challenged the administrative judge's determination that her claim that she lacked credentials and was not paid after she returned to work following her reinstatement was untimely filed, or his alternative determination denying the claim on the merits. CID at 9. As the administrative judge observed, the appellant conceded below that her credentials were restored and she was paid within 2 months of her reinstatement. *Id.*; CF, Tab 27 at 6. Thus, by the appellant's admission, the payment took place no later than February 2023. However, she did not file her petition for enforcement until July 2024, approximately 16 to 17 months later. CF, Tab 1. Thus, her petition for enforcement was untimely. In any event, the Board lacks the authority to impose punishment or sanctions once compliance has been obtained. *Bruton v. Department of Veterans Affairs*, 112 M.S.P.R. 313, ¶ 14 (2009). Therefore, even

if her petition for enforcement were timely, the Board could not grant relief for any alleged delay.

<u>The appellant's petition for enforcement was untimely filed concerning a debt for used but unearned leave.</u>

The appellant generally argues that the administrative judge erred by dismissing her petition for enforcement as untimely. CPFR File, Tab 1 at 4-5. To the extent that she is challenging the administrative judge's determination that her claim concerning a debt for used but unearned leave was untimely filed, we affirm the compliance initial decision. CID at 13.

"[A]n enforcement petition alleging a breach of a settlement agreement . . . must be filed within a reasonable amount of time of the date the petitioning party becomes aware of a breach of the agreement." *Kasarsky v. Merit Systems Protection Board*, 296 F.3d 1331, 1335 (Fed. Cir. 2002). "The reasonableness of the time period depends on the circumstances of each case." *Id.*

Below, the appellant challenged the agency's calculation of a debt related to unearned sick or annual leave that she used before her removal. CF, Tab 25 at 5, 8-9. To substantiate her claim, she provided a letter from the agency dated September 27, 2023, notifying her that she received payment for 141.58 hours of annual leave that she had not earned prior to her retirement. CF, Tab 27 at 22. We agree with the administrative judge that by September 2023, the appellant had actual knowledge of this alleged breach. CID at 13. From the record below, it seems that the first time the appellant sought to resolve this issue with the agency was February 2024, or roughly 5 months later, when she emailed the agency to inquire as to how the agency calculated the amount of leave that she had overdrawn. CF, Tab 25 at 29, Tab 27 at 8. She filed her petition for enforcement in April 2024, seven months after learning of the breach.

We agree with the administrative judge that this claim was untimely raised, and the appellant does not dispute this specific finding on review. In reaching this decision, we have considered the decision of U.S. Court of Appeals for the

Federal Circuit in *Reyes v. Merit Systems Protection Board*, 159 F.4th 1356 (Fed. Cir. 2025), which was issued after the issuance of the compliance initial decision. The administrative judge did not have the benefit of the *Reyes* decision below.

The Federal Circuit found in *Reyes* that a delay of 4 months in filing a petition for enforcement after learning of harm caused by an agency breach was reasonable when, in the interim, the petitioner retained counsel and contacted the agency directly to resolve the alleged breach. *Reyes*, 159 F.4th at 1360. However, a petition for enforcement filed months after becoming aware of the breach, without any indication that the appellant otherwise diligently pursued resolution, is untimely. *See Nichols v. Department of the Air Force*, 102 M.S.P.R. 551, ¶ 15 (2006) (finding that an appellant's petition for enforcement was untimely filed more than 10 months after she became aware of the agency's alleged breach), *aff'd per curiam*, 253 F. App'x 961 (Fed. Cir. 2007); *Chudson v. Environmental Protection Agency*, 71 M.S.P.R. 115, 118 (1996) (dismissing an appellant's petition for enforcement as untimely filed when he became aware of the alleged breach more than 1 year before filing), *aff'd per curiam*, 132 F.3d 54 (Fed. Cir. 1997) (Table).

Here, the appellant waited 5 months after learning of the alleged breach to raise her concerns with the agency. She then filed her petition for enforcement after another 2 months passed. Even with the benefit of the Federal Circuit's decision in *Reyes*, we therefore agree with the administrative judge that the appellant's claim regarding her leave was untimely filed, and we affirm the administrative judge's dismissal of this claim. We vacate as unnecessary the administrative judge's determination that the appellant failed to prove the merits of this breach claim. CID at 14.

<u>The appellant timely filed her petition for enforcement concerning her claim that the agency breached the agreement by collecting a debt related to health insurance premiums.</u>

The appellant alleged that the agency breached the settlement agreement by collecting a debt comprised of health insurance premiums that the appellant accrued between her March 2016 removal and November 2022 reinstatement. CF, Tab 1 at 3. The appellant stated that she first discovered the agency's garnishment action in January 2024. CF, Tab 27 at 6-9. She filed her petition for enforcement 4 months later. CF, Tab 1. She alleged that "shock from the significant financial repercussions delayed [her] immediate response." CF, Tab 27 at 6. However, she also alleged that between "February and early March 2024, . . . [she] diligently reached out to various [agency] departments without resolution," and "[f]aced with no alternatives, [she] gathered the necessary information and submitted the [p]etition for [e]nforcement in April 2024." *Id.* The appellant provided evidence that during or prior to February 2024 she contacted the agency's accounting services and the agency representative in her prior Board appeal to find out why the agency was garnishing her wages and how to correct the issue. CF, Tab 25 at 28-30. The agency does not dispute that the appellant contacted the agency to resolve the matter in the time between becoming aware of the alleged breach and filing the petition for enforcement. CF, Tab 26 at 4-5.

As discussed above, the Federal Circuit concluded that an employee acted reasonably in waiting 4 months to file his petition for enforcement while he attempted to resolve the breach without involving the Board. *Reyes*, 159 F.4th at 1358, 1360. The Board has similarly found such delays to be reasonable. *E.g.*, *Phillips v. Department of Homeland Security*, 118 M.S.P.R. 515, ¶ 11 (2012) (finding that an appellant's 4-month filing delay was reasonable when she acted diligently to contact the agency to determine whether it complied with its obligations under the settlement agreement before filing a petition for

enforcement). We find that under the circumstances of this appeal, the appellant's filing delay was reasonable because, rather than sitting idly, she attempted to contact the agency to resolve the alleged breach before filing her petition for enforcement. We therefore find that the appellant's petition for enforcement is timely regarding the claim that the agency breached the settlement agreement by garnishing her wages to collect a debt comprised of health insurance premiums that the appellant accrued between her removal and reinstatement.

The agency breached the settlement agreement by garnishing the appellant's pay from her private employer for health insurance premiums that were discharged by the parties' settlement agreement.

On petition for review, the appellant disputes the administrative judge's determination that the agency did not breach the settlement agreement by garnishing the appellant's wages to collect a debt for unpaid health insurance premiums, which accrued between her removal and reinstatement. CPFR File, Tab 1 at 5-6. The administrative judge found that nothing in the settlement agreement required the agency to forgive or otherwise satisfy the appellant's obligations stemming from her election to continue receiving health insurance after her removal. CID at 11-13. We agree with the appellant.

In the introductory portion of the agreement, the parties expressed their intent to "globally settle and compromise fully any and all claims" that were or "could have been raised," arising out of the appellant's removal and "employment with the [agency]." RF, Tab 26 at 4. Paragraph 7 of the parties' settlement agreement reads: "[the agency] agrees to pay [the appellant] the total lump sum of FIFTY THOUSAND DOLLARS ($50,000.00) . . . in full settlement and satisfaction of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, arising from . . . the subject matter of this settlement." *Id.* at 6. Because neither the introduction nor paragraph 7 of the agreement specifies the parties' intent that this global settlement would constitute

a one way release, and because paragraph 7 states that the agency's payment to the appellant is a "full settlement and satisfaction of any and all claims . . . arising . . . from the subject matter of the settlement," we find that this language is a mutual release by both parties of any claims arising from the appellant's removal and subsequent reinstatement. Such terms have been read broadly. *See W. Vinten Limited v. United States*, 213 Ct. Cl. 759 (Ct. Cl. 1977) (per curiam) ([F]ull and final settlement . . . constitutes a general release of all claims between the parties which are not expressly reserved or excepted from the scope of the agreement.).[2]

In the past, the Board has found that similar language expressed the parties' desire to fully resolve their outstanding disputes. *See Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 9 (concluding that a settlement agreement that included a general release of "all Claims that [an appellant] ha[d] the right to pursue before . . . [the Board] . . . regarding facts arising on or prior to the [2014] date" of signing the agreement barred the appellant from raising a claim that he was not selected for positions in 2008 and 2012 in reprisal for whistleblowing); *Laity v. Department of Veterans Affairs*, 61 M.S.P.R. 256, 263 (1994) (finding that a settlement that fully resolved any and all matters related to the issues leading to the issuance of a suspension waived the appellant's appeal right to file an individual right of action appeal stemming from the suspension); *Paderick v. Office of Personnel Management*, 54 M.S.P.R. 456, 459 n.2 (1992) (finding that an agreement providing that it was a "full and final settlement of all matters" in the appeal constituted a waiver of the right to move for payment of attorney fees).

---

[2] The holdings of the U.S. Court of Claims issued through September 30, 1982, are binding precedent in the U.S. Court of Appeals for the Federal Circuit. *South Corp v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982). These decisions of the U.S. Court of Claims are, in turn, binding on the Board. *Social Security Administration v. Mills*, 73 M.S.P.R. 463, 469-70 (1996), *aff'd*, 124 F.3d 228 (Fed. Cir. 1997) (Table).

The appellant accrued a debt of $7,188.23 for health insurance premiums paid by the agency after her removal between August 2016 and May 2017.[3] CF, Tab 28 at 5, 42. On December 15, 2022, nearly a month after executing the settlement agreement, the agency issued a wage garnishment order to the appellant's private employer to collect on that debt. *Id.* at 42; RF, Tab 26 at 6. The settlement agreement does not explicitly reserve the right to collect on this debt. RF, Tab 26. We therefore find that the agency breached the settlement agreement by collecting this payment because the agreement resolves all outstandings disputes related to the appellant's removal and reinstatement. If the agency wanted to exclude this debt from the global settlement agreement, then it should have so indicated in the agreement by expressly reserving it. *See Johnson v. U.S. Postal Service*, 108 M.S.P.R. 502, ¶ 16 (2008) (finding that, regardless of whether the appellant was aware of his Board appeal rights, he waived them when his union entered into a global settlement agreement on his behalf without expressly reserving them), *aff'd per curiam*, 315 F. App'x 274 (Fed. Cir. 2009).[4]

---

[3] The appellant argues that the agency "grossly exaggerated" the amount of the debt in its garnishment notice that it issued to her private employer to reflect that she owed the agency $999,999.99. CPFR, Tab 1 at 6-7, 22. However, as the agency below argued, its original garnishment order reflected that the appellant owed the agency $7,188.23, and it was a collection company acting on behalf of the appellant's private employer that erroneously stated that the figure debt was $999,999.99. CF, Tab 28 at 5, 42. The appellant's evidence in support of her petition for enforcement supports the agency's argument. CF, Tab 1 at 9-11, 14-17. In any event, because we have found that the agency breached the settlement agreement by collecting this debt, we need not consider the appellant's argument that it intentionally and grossly inflated the amount due in its garnishment order.

[4] On review, the appellant also alleges that the agency forged her signature on Postal Service Form 3111, which shows that the appellant elected to maintain her health insurance coverage for a period after her removal, eventually leading to the instant debt. CPFR File, Tab 1 at 8. Because we have found that the agency breached the settlement agreement by collecting this debt, we need not consider the appellant's allegation that the agency forged the documentation that led to its creation.

To the extent that the appellant also argues that she was entitled to retroactive health insurance benefits, we disagree. In the petition for enforcement, the appellant alleged that the agency failed to comply with the settlement agreement when it failed to properly restore her health insurance benefits. CF, Tab 1 at 2. It is unclear whether the appellant was alleging that the agency was obligated to pay her health insurance retroactively for the period between her removal and reinstatement. However, to the extent that she was, we agree with the administrative judge that this claim is waived by the settlement agreement. CID at 10, 12-13.

Paragraph 8 of the parties' settlement agreement states that the appellant "agrees that she is not entitled to . . . any retroactive benefit for any period of time, attorney's fees, or any other relief that is not specifically set forth in this [a]greement." RF, Tab 26 at 6. Because the parties' settlement agreement does not explicitly provide for health insurance benefits, we agree with the administrative judge that the appellant waived this claim.

We modify the administrative judge's reasoning for denying the appellant's petition for enforcement as it concerns life insurance benefits.

The appellant reargues the merits of her claim that either OPM or the agency improperly processed forms regarding her life insurance upon her retirement. CPFR File, Tab 1 at 9-10. The administrative judge declined to order compliance regarding life insurance, reasoning that the appellant waived her right to retroactive benefits in the agreement. CID at 11-12; RF, Tab 26 at 6. We modify this reasoning.

The appellant initially appeared to claim that the agency "failed to restore" her life insurance, among other benefits, when she was reinstated in November 2022. CF, Tab 1 at 2. However, her subsequent submissions make clear that she was contesting the termination of her life insurance upon her retirement. CF, Tab 25 at 5, 23, Tab 27 at 7. On review, the appellant again contests her life insurance coverage upon retirement. CPFR File, Tab 1 at 9, 28-30. Because the

appellant's retirement was subsequent to the agreement, it is neither a retroactive benefit nor a claim that the appellant waived pursuant to the terms of the agreement. RF, Tab 26 at 6. Therefore, we modify the administrative judge's determination that this claim was waived.

The Board's enforcement authority is limited to enforcing the terms of the settlement agreement itself. *Smith v. Department of Veterans Affairs*, 47 M.S.P.R. 297, 302-03 (1991) (explaining that an appellant's request for compensation for mental and emotional distress and his allegation that the agency was negligent in correcting his employment record were unrelated to the terms of the settlement agreement and therefore outside of the Board's enforcement authority). Here, the agreement did not contemplate or discuss the processing of the appellant's retirement. Therefore, we modify the initial decision to conclude that the appellant's life insurance upon retirement is outside the scope of the agreement, and we lack jurisdiction to order any relief in the context of this enforcement matter. *See Niederhofer v. Office of Personnel Management*, 115 M.S.P.R. 211, ¶ 5 (2010) (finding that claims concerning Federal employee life insurance and Federal employee health insurance programs generally are beyond the Board's jurisdiction). In light of our determination, we decline to reach the issue of whether the appellant untimely sought enforcement regarding the life insurance matter. We vacate the administrative judge's finding of untimeliness as unnecessary to resolve this claim.

An individual may appeal to the Board from a final OPM decision adversely affecting her rights or interests under the Federal Employees' Retirement System (FERS). 5 U.S.C. § 8461(e)(1); *Fletcher v. Office of Personnel Management*, 118 M.S.P.R. 632, ¶ 7 (2012); *Niederhofer*, 115 M.S.P.R. 211, ¶ 5. The appellant was covered under FERS, and we assume that she retired under this system. CF, Tab 27 at 19. She asserts that OPM has improperly determined that she owes an overpayment of interim annuity benefits associated with her life insurance. CF, Tab 25 at 5, 25; CPFR File, Tab 1 at 9.

However, she has not stated whether she requested reconsideration of OPM's determination or if OPM has responded to such a request. The appellant may wish to file a new appeal from any final decision issued by OPM regarding this overpayment. We make no finding as to the timeliness or merits of any such appeal.

## ORDER

We ORDER the agency to submit to the Clerk of the Board within 35 days of the date of this decision satisfactory evidence of compliance with this decision. This evidence shall adhere to the requirements set forth in 5 C.F.R. § 1201.183(b)(1)(i), including submission of evidence and a narrative statement of compliance. The agency's submission must include proof that it properly cancelled the appellant's health insurance premium debt and reimbursed the appellant all wage garnishments collected in connection with the health insurance premiums after the execution of the parties' settlement agreement. We ORDER the appellant to cooperate in good faith in the agency's efforts to cancel the health insurance premium debt and reimburse the wage garnishments, and to provide all necessary information the agency requests to help it carry out the Board's Order. The agency must serve all parties with copies of its submission.

The agency's submission should be filed under the new docket number assigned to this compliance referral matter, **MSPB Docket No. DC-0752-16-0463-X-1**. All subsequent filings should refer to the new docket number set forth above and should be filed with the Office of the Clerk of the Board.

Pursuant to 5 C.F.R. § 1201.14(e)(5), (f), agency representatives and appellant attorney representatives must electronically file via e-Appeal, https://e-appeal.mspb.gov. Appellants are encouraged to electronically file via e-Appeal. Appellant submissions may also be faxed to (202) 653-7130 or mailed to the following address:

Clerk of the Board
U.S. Merit Systems Protection Board
1615 M Street, N.W.
Washington, D.C. 20036

The appellant may respond to the agency's evidence of compliance within 20 days of the date of service of the agency's submission. 5 C.F.R. § 1201.183(b)(1)(i). **If the appellant does not respond to the agency's evidence of compliance, the Board may assume that she is satisfied with the agency's actions and <u>dismiss</u> the petition for enforcement.**

The agency is reminded that, if it fails to provide adequate evidence of compliance, the responsible agency official and the agency's representative may be required to appear before the General Counsel of the Merit Systems Protection Board to show cause why the Board should not impose sanctions for the agency's noncompliance in this case. 5 C.F.R. § 1201.183(c)(1). The Board's authority to impose sanctions includes the authority to order that the responsible agency official "shall not be entitled to receive payment for service as an employee during any period that the order has not been complied with." 5 U.S.C. § 1204(e)(2)(A).

This Order does not constitute a final order and is therefore not subject to judicial review under 5 U.S.C. § 7703(a)(1). Upon final resolution of the remaining issues in this petition for enforcement by the Board, a final order shall be issued which shall be subject to judicial review.


FOR THE BOARD:                    _____
                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.